UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
:
UNITED STATES OF AMERICA :
: 14 Cr. 748 (PAE)
- v. - :
:
DIMITRY BRAVERMAN, :
:
             Defendant. :
:
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x


**GOVERNMENT'S SENTENCING SUBMISSION**


                                      PREET BHARARA
                                      United States Attorney for the
                                      Southern District of New York
                                      One St. Andrew's Plaza
                                      New York, New York  10007


Amy Lester
Assistant United States Attorney
   -- Of Counsel --

## PRELIMINARY STATEMENT

The Government respectfully submits this memorandum in connection with the sentencing of defendant Dimitry Braverman ("Braverman"), which is scheduled for July 29, 2015, at 2:15 p.m.  For the reasons that follow, the Government submits that a sentence within the advisory range of 30 to 37 months' imprisonment as calculated pursuant to the United States Sentencing Guidelines (the "Guidelines" or "U.S.S.G.") in the Presentence Investigation Report ("PSR") is appropriate in this case.

Braverman engaged in insider trading based on material non-public information he learned through his employment as a senior member of the information systems ("IS") applications department of a prominent national law firm.  Beginning in September 2010 through December 2013, Braverman traded in the securities of at least eight clients of the law firm, reaping more than $300,000 in ill-gotten gains.

Braverman's criminal conduct was sustained and brazen, and the goals of sentencing—in particular, to reflect the seriousness of the offense, promote respect for the law, and adequately deter others from committing similar conduct—warrant a term of imprisonment within the Guidelines range.

## STATEMENT OF FACTS

On November 13, 2014, Braverman entered a plea of guilty to Count One of the Information, charging him with securities fraud.  (PSR ¶ 4).  The charged conduct stemmed from Braverman's employment as a Senior Info Systems Engineer within the IS applications department of Wilson Sonsini Goodrich & Rosati (the "Law Firm"), based in Palo Alto, California.  At the time of the commission of his offense, Braverman was one of twelve individuals within the IS applications department of the Law Firm, and one of four Senior

Systems Engineers.[1]  In that role, Braverman provided support for approximately thirty applications utilized by the Law Firm, including providing primary support for a database containing information about the intake of new client matters.[2]  Based on his role within the IS applications department, Braverman also had access to other sensitive client-related databases and applications, including (a) information used by the Law Firm in connection with conflict checks, such as the names of clients and adverse parties, (b) time sheets, and (c) billing records.  (PSR ¶¶ 6-7).

As part of his employment, Braverman agreed to comply with the Law Firm's policies prohibiting the unauthorized disclosure of clients' privileged and/or material non-public information to anyone other than other employees of the Law Firm who had a legitimate need to know the information in order to do their jobs, as well as the Law Firm's prohibition on insider trading.  (PSR ¶ 45).

Braverman's level of access to confidential client-related information through his role as a Senior Systems Engineer—particularly about new matters and billing—gave him an unusual amount of insight into the Law Firm's work on potential mergers and acquisitions.  (PSR ¶ 16).  Braverman used this information to trade advantageously in the stock of at least four clients of the Law Firm between September 2010 and April 2011.  (Information 14 Cr. 748 (PAE) ¶ 43).[3]  Braverman also advised his brother to purchase stocks in two of these companies.  (PSR ¶ 16).

On April 6, 2011, an associate at Wilson Sonsini, Matthew Kluger, was arrested and charged with insider trading.  (PSR ¶ 32).  That same day, Braverman closed out of his positions in Seagate Technology PLC, a client of the Law Firm.  (PSR ¶ 33).

---

[1] The Law Firm also had IS administration, IS operations, and IS technical support departments.
[2] This database is referred to in the defense submission as the "New Matter Intake System."
[3] The PSR contains a chart that incorrectly calculates Braverman's gains.  The correct amounts are listed in the Information.

Braverman resumed his trading activity in November 2012, and between that period and December 2013, traded in the securities of at least four additional clients of the Law Firm. (Information ¶ 43). In total, Braverman profited in the amount of $304,910.44. (*Id.*).

## **DISCUSSION**

Applying the factors set forth in Title 18, United States Code, Section 3553(a), a sentence within the applicable Guidelines range of 30 to 37 months' imprisonment would be "sufficient, but not greater than necessary" to serve the goals of sentencing. Braverman used his trusted position at the Law Firm to gain access to confidential non-public material information about the Law Firm's clients. He then traded on that information for his own personal gain. Even after another employee of the Law Firm was arrested on charges of insider trading, Braverman's greed got the better of him, and he continued to trade. The "nature and circumstances of the offense," 18 U.S.C. § 3553(a)(1), thus weigh heavily in favor of a term of imprisonment.

So, too, do the "history and characteristics of the defendant," *id.*, insofar as they are reflected in such sustained, calculated criminal conduct which continued even after Braverman became acutely aware of the potential criminal penalties in April 2011. Finally, a Guidelines sentence is needed here to reflect the seriousness of the offense, promote respect for the law, and adequately deter similar conduct. 18 U.S.C. § 3553(a)(2).

I.      **Application of the Guidelines: Abuse of Position of Trust**

The Government and the Probation Office agree that the advisory Guidelines range in this case is 30 to 37 months' imprisonment, based on an Offense Level of 19 and a Criminal History Category of I. (PSR ¶ 60, 64, 90). In his submission, Braverman argues that the Court should not apply a two-level enhancement for abuse of trust pursuant to Section 3B1.3 of the

3

Guidelines.[4]  For the reasons set forth below, the Government believes the enhancement is appropriate on the facts of this case and is supported by relevant case law and the commentary to the relevant Guidelines provisions.

Section 3B1.3 of the Guidelines provides for a two-level enhancement of a defendant's offense level "[i]f the defendant abused a position of public or private trust . . . in a manner that significantly facilitated the commission or concealment of the offense." U.S.S.G. § 3B1.3.  An Application Note explains that "'public or private trust' refers to a position of public or private trust characterized by professional or managerial discretion (*i.e.*, substantial discretionary judgment that is ordinarily given considerable deference).  Persons holding such positions ordinarily are subject to significantly less supervision than employees whose responsibilities are primarily non-discretionary in nature."  *Id.*, comment. (n.1).  Thus, whether a defendant occupies such a position "turns on 'the extent to which the position provides the freedom to commit a difficult-to-detect wrong.'"  *United States* v. *Allen*, 201 F.3d 163, 166 (2d Cir. 2000) (per curiam) (citation omitted); *United States* v. *Barrett*, 178 F.3d 643, 646 (2d Cir. 1999).  Whether a defendant occupies a position of trust is assessed from the perspective of the victim; that is, the discretion that is the hallmark of the enhancement "must be entrusted to the defendant by the victim."  *United States* v. *Broderson*, 67 F.3d 452, 456 (2d Cir. 1995).

The commentary to Section 2B1.4 of the Guidelines provides an example of when the abuse of trust enhancement should apply in the insider trading context:  in the case of "a corporate president or an attorney who misused information regarding a planned but unannounced takeover attempt."  U.S.S.G. § 2B1.4, comment. (n.2).

---

[4] The Government is not arguing that Braverman used a "special skill" to commit the offense in this case.

The Second Circuit has not ruled on the application of Section 3B1.3 in the context of insider trading.  However, both the Third Circuit, in an unpublished opinion, and the Eighth Circuit, have considered the application of the enhancement to insider trading defendants.  In *United States* v. *Heron*, 323 Fed. App'x 150, 2009 WL 868017, at *1 (3d Cir. 2009), the Third Circuit found that the district court erred in not applying the abuse of trust enhancement to a defendant who was the general counsel and chief insider trading compliance officer of a publicly traded corporation, and in that role, had access to material non-public information about the corporation's financial results.  323 Fed. App'x 159, 2009 WL 868017, at *8.  In *United States* v. *O'Hagan*, 139 F.3d 178 (8th Cir. 1998), the Eighth Circuit upheld the district court's application of the enhancement in a case where the defendant, a senior partner at a law firm who specialized in securities law, traded on material non-public information he learned from another partner about a planned tender offer by a client of the firm.  In both cases, the courts relied on the example in Application Note 1 of the commentary to the insider trading guideline of "an attorney who misused information regarding a planned but unannounced take over attempt."  U.S.S.G. § 2B1.4, comment. (n.1).  *See Heron*, 323 Fed. App'x at 159; *O'Hagan*, 139 F.3d at 656.

In this case, as noted in the PSR, Braverman's position as a Senior Info Systems Engineer "was clearly a factor in his ability to carry out the offense, as his access to the [Law Firm's] various, privileged information (which [the Law Firm] believed to be safeguarded in [its] computer files) was based upon his position."  (PSR Addendum at 25).  The Government agrees with Probation's assessment that, while other IS employees had access to the same non-public information, that fact does not negate the application of the enhancement.  (*See id.*).  The combination of information to which Braverman had access, while not unique to him, was unusual, and gave rise to his position of special trust.  There is no question that, in the view of

5

the Law Firm, Braverman was a trusted long-term employee who was given a high level of access to sensitive and confidential client information as part of his job duties.

On this point, the case of *United States* v. *Pedersen*, 3 F.3d 1468 (11th Cir. 1993), is instructive.  Pedersen was a police detective who unlawfully accessed confidential information stored in various government computer databases in order to sell it to a third party, and was sentenced under the insider trading guideline, which was deemed the most analogous to his offense.  3 F.3d at 1469.  The district court applied the two-level enhancement for abuse of trust, and the Eleventh Circuit affirmed, rejecting the defendant's argument that because he was an ordinary police officer, not a supervisor, with the same access to information as other officers, he could not be deemed to occupy a position of special trust.  *Id.* at 1471.  The Court held:

> Not only was the integrity and legitimacy of the information system undermined by Pedersen's offenses, but specific individuals, who were entitled to expect that the integrity of the information would be maintained by Pedersen and others in his position, suffered breaches of their privacy. . . . Pedersen's conduct was more akin to that of a corporate president or attorney whose use of non-public takeover information has implications beyond the general market typically affected by an insider trading violation.

*Id.* at 1471-72.

In this case, Braverman was able to commit and avoid detection of his illegal activities because he was entrusted with maintaining and supporting the confidential databases which he used to learn the material non-public information at issue.  For example, Braverman's supervisor would not think it odd if Braverman spent time querying the new matter intake database, because he was the primary support person within the IS applications department for that database. Moreover, like Pedersen, Braverman's conduct had implications beyond the market effect of his

trades. He unquestionably damaged the reputation of the Law Firm where he had worked for more than ten years and compromised the confidentiality and security of its clients' information.

Thus, Braverman's role in maintaining and safeguarding client information through his work in the IS applications department constituted a position of special trust at the Law Firm, and the two-level enhancement is warranted because he abused that trust.

## II.     The Governing Legal Framework

The Guidelines still provide strong guidance to the Court in light of *United States* v. *Booker*, 543 U.S. 220 (2005), and *United States* v. *Crosby*, 397 F.3d 103 (2d Cir. 2005). Although *Booker* held that the Guidelines are no longer mandatory, it held also that the Guidelines remain in place and that district courts must "consult" the Guidelines and "take them into account" when sentencing. *Booker*, 543 U.S. at 264. As the Supreme Court stated, "a district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range"—that "should be the starting point and the initial benchmark." *Gall* v. *United States*, 552 U.S. 38, 49 (2007).

After that calculation, however, a sentencing judge must consider seven factors outlined in Title 18, United States Code, Section 3553(a): "the nature and circumstances of the offense and the history and characteristics of the defendant," 18 U.S.C. § 3553(a)(1); the four legitimate purposes of sentencing, *see id*. § 3553(a)(2); "the kinds of sentences available," *id*. § 3553(a)(3); the Guidelines range itself, *see id*. § 3553(a)(4); any relevant policy statement by the Sentencing Commission, *see id*. § 3553(a)(5); "the need to avoid unwarranted sentence disparities among defendants," *id*. § 3553(a)(6); and "the need to provide restitution to any victims," *id.* § 3553(a)(7). *See Gall*, 552 U.S. at 50 & n.6.

In determining the appropriate sentence, the statute directs judges to "impose a sentence sufficient, but not greater than necessary, to comply with the purposes" of sentencing, which are:

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B) to afford adequate deterrence to criminal conduct;

(C) to protect the public from further crimes of the defendant; and

(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

18 U.S.C. § 3553(a)(2).

Courts may not presume that the appropriate sentence necessarily lies within the applicable Guidelines range, but "the fact that § 3553(a) explicitly directs sentencing courts to consider the Guidelines supports the premise that district courts must begin their analysis with the Guidelines and remain cognizant of them throughout the sentencing process." *Gall*, 552 U.S. at 50 n.6.  Their relevance throughout the sentencing process stems in part from the fact that, while the Guidelines are advisory, "the sentencing statutes envision both the sentencing judge and the Commission as carrying out the same basic § 3553(a) objectives," *Rita* v. *United States*, 551 U.S. 338, 348 (2007), and the Guidelines are "the product of careful study based on extensive empirical evidence derived from the review of thousands of individual sentencing decisions," *Gall*, 552 U.S. at 46; *see also Rita*, 551 U.S. at 349.  To the extent a sentencing court varies from the Guidelines sentence, "[it] must consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance." *Gall*, 552 U.S. at 50.

### III. The Nature and Circumstances of the Offense

The seriousness of the offense here is significant. As in any insider trading case, the Braverman's conduct undermined confidence in the integrity of the financial markets, disadvantaged ordinary investors who follow the rules, and violated confidences of the companies whose secret information he misappropriated for his own use. But more specifically, in this case, Braverman was a ten-year veteran of the Law Firm and a trusted member of the IS applications department at the time that he began trading on inside information. He had achieved a commendable level of professional success after immigrating to the United States. Braverman understood that that he had a clear and unequivocal duty to protect the interests of the clients of the Law Firm and to protect the confidential information that he learned through his work. Yet, time and time again, over the span of more than three years, Braverman flouted the law and abused his position of trust for his own personal gain.

Although Braverman's criminal conduct appears to represent a deviation from an otherwise law-abiding life, his crimes were not an isolated occurrence or a momentary lapse in judgment. Indeed, the opposite is true. Braverman traded in the securities of at least eight Law Firm clients over a series of years, and tipped his brother as well.

For these reasons, the nature and circumstances of the offense weigh in favor of a Guidelines sentence.

### IV. The History and Characteristics of the Defendant

Certain positive aspects of Braverman's character are reflected in his letter to the Court and the letters of his friends and family members submitted to the Court on his behalf. And his life has not been without challenges, as reflected in some of those letters. However, at bottom, Braverman committed a serious crime that was fueled by his own greed. If the conduct at issue

9

truly were an aberration, the call for leniency on the basis of the issues raised in the defense submission might have more merit. As it is, however, the Court's assessment of Braverman's character cannot ignore the scope and extent of his crime, which spanned over three years and compromised all he and his family had worked for since coming to the United States.

## V.    A Guidelines Sentence is Appropriate to Serve the Purpose of Deterrence

Turning to the needs to promote respect for the law and afford adequate deterrence, the Government urges the Court to consider the manner in which Braverman's conduct reflected not respect, but contempt, for the law, in that he continued to trade on inside information even after another employee of the Law Firm was arrested for the same conduct.

Moreover, given the inherent difficulties in detecting and prosecuting illegal insider trading crimes, a substantial term of imprisonment is necessary and, indeed, essential to achieve the goals of general deterrence. *See, e.g., United States* v. *Jiau*, 11 Cr. 161 (JSR), 9/21/2011 Sentencing Transcript, at 40 (discussing need for general deterrence because "by its very nature [insider trading] is hard to detect but easy to commit and so the temptation is great and the chances of getting away with it, so to speak, are great."); *United States* v. *Naseem*, 07 Cr. 610 (RPP), 5/30/2008 Sentencing Transcript, at 70 ("I'm not sure the guideline offense [level for insider trading] is great enough. This kind of conduct has been prosecuted before and it doesn't seem to deter people very much. So that is a strong reason to adhere to the guideline calculation."); *see also United States* v. *Kurland*, 718 F. Supp. 2d 316, 321 (S.D.N.Y. 2010) (Marrero, J.) ("The Court gives significant weight here to the principle of general deterrence, and the importance of serious enforcement of the securities laws, particularly in cases such as this, where an individual with great influence in the securities field flouts the law. Mr. Kurland built his life off of the integrity of the stock markets, and it is this Court's view that he therefore had a

special responsibility to safeguard the integrity of those markets, and to set an example: that insider trading is serious criminal behavior, and not simply an unwritten part of the job description."); *United States* v. *Koulouroudis*, 09 CR 440 (PGG), 4/9/2010 Sentencing Transcript, at 27-28 ("Given the enormous financial awards as a result of this kind of fraud and the difficulties of detecting it, it is my belief that a term of imprisonment is often appropriate in this type of case to serve certain objectives and general deterrence and respect for the law."); *United States* v. *Heffernan*, 43 F.3d 1144, 1149 (7th Cir. 1994) (Posner, J.) ("Considerations of (general) deterrence argue for punishing more heavily those offenses that either are lucrative or are difficult to detect and punish, since both attributes go to increase the expected benefits of a crime and hence the punishment required to deter it.").

## CONCLUSION

For the foregoing reasons, the Government respectfully submits that a sentence within the advisory Guidelines range of 30 to 37 months' imprisonment is appropriate in this case.

DATED:    July 22, 2015
               New York, New York

               Respectfully submitted,

               PREET BHARARA
               United States Attorney

               By: /s Amy Lester
                    Amy Lester
                    Assistant U.S. Attorney
                    Southern District of New York
                    Tel. (212) 637-2416

cc:    Silvia L. Serpe, Esq.